```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION
```

| | |
|---|---|
| LÄNSFÖRSÄKRINGAR SAK FÖRSÄKRINGSAKTIEBOLAG,<br><br>        Plaintiff,<br><br>v.<br><br>PALLETIZED TRUCKING, INC.<br>and BERTLING LOGISTICS, INC.,<br><br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§      CIVIL NO. H-03-5381<br>§<br>§<br>§<br>§<br>§ |

## ORDER

Pending before the court is Palletized Trucking, Inc.'s Motion for Reconsideration (Docket Entry No. 62) and Bertling Logistics, Inc.'s Motion for Entry of Final Judgment (Docket Entry No. 64). The court has considered both motions, the responses and replies thereto, and the applicable law. For the reasons discussed below, Palletized Trucking, Inc.'s Motion for Reconsideration is **GRANTED** and Bertling Logistics, Inc.'s Motion for Entry of Final Judgment is **DENIED**.

### I. Analysis

**A.    Motion for Reconsideration**

In its Memorandum Opinion dated March 31, 2005, the court held that Palletized Trucking, Inc. ("Palletized") could not limit its liability for damage or loss caused to the module it delivered from Texas to Colorado on behalf of Bertling Logistics, Inc. ("Bertling Logistics"). Thus, with respect to the limitation issue, the court granted Plaintiff's summary judgment motion and denied Palletized's

cross-motion for partial summary judgment. Palletized now seeks to have the court reconsider its determination on this issue. Upon further consideration of the record and the applicable law, the court grants the motion.

**1.   Does the Hoskins "limitation of liability" test apply?**

The general rule under the Carmack Amendment is that a motor carrier is liable "for the actual loss or injury to the property" it transports. 49 U.S.C. § 14706(a)(1). However, an exception to this rule is that the carrier may limit its liability to a value declared by the shipper or to an amount agreed upon by the carrier and shipper in writing if that value would be reasonable under the circumstances surrounding the carriage. Id. § 14706(c)(1)(A).

Interpreting this language, courts have traditionally allowed a carrier to limit its liability if the carrier can satisfy a four-prong test. In Hoskins v. Bekins Van Lines, 343 F.3d 769 (5th Cir. 2003), the Fifth Circuit set forth these four requirements, holding that a carrier may limit its liability if it:

> (1) maintains a tariff within the prescribed guidelines of the Interstate Commerce Commission (now the Surface Transportation Board); (2) obtains the shipper's agreement as to her choice of liability; (3) gives the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issues a receipt or bill of lading prior to moving the shipment.

Id. at 778 (citing Rohner Gehrig Co. v. Tri-State Motor Transit, 950 F.2d 1079, 1081 (5th Cir. 1992)). Palletized contends this test is invalid because it does not accurately reflect the requirements

set forth in the current version of the Carmack Amendment. To this end, it points out that the court in <u>Hoskins</u> failed to mention two statutory changes to the Carmack Amendment that had a direct impact on the traditional four-prong "limitation of liability" test: the Trucking Industry Regulatory Reform Act of 1994 ("TIRRA")[1] and the ICC Termination Act of 1995 ("ICCTA").[2] The TIRRA eliminated the existing requirement that non-household goods carriers had to file tariffs with the Interstate Commerce Commission ("ICC"). 49 U.S.C. §§ 10702 and 10730. The ICCTA revised and recodified the Carmack Amendment. <u>See</u> 49 U.S.C. § 14706 et seq. Among other things, this statute abolished the ICC and added a subsection entitled "carrier notification," which requires a carrier to now provide its tariff to the shipper only upon shipper request. <u>Id.</u> § 14706(c)(1)(A). <u>Hoskins</u>, a household goods case, did not address the effects of these statutory revisions on the carriage of non-household goods. <u>See</u> <u>Hoskins</u>, 343 F.3d at 769.

Palletized contends these two statutes rendered obsolete the first prong of the <u>Hoskins</u> test as applied to non-household goods carriers. The court agrees that the first prong is of questionable application in situations where, like here, a non-household goods carrier attempts to limit its liability. Before the TIRRA was

---

[1] <u>See</u> Trucking Industry Regulatory Reform Act of 1994, Pub. L. No. 103-311, tit. II, § 206, 108 Stat. 1673, 1684-85.

[2] <u>See</u> ICC Termination Act of 1995, Pub. L. No. 104-88, tit. I, § 103, 109 Stat. 907-10.

enacted, <u>all</u> motor carriers were required to maintain tariffs with the ICC.  However, after its passage, only household goods carriers and carriers engaged in non-contiguous domestic trade were required to keep published tariffs.  <u>See</u> 49 U.S.C. § 13702(a).  Certainly, Palletized is correct that it would make no sense to require a motor carrier of non-household goods to keep a tariff on file with the ICC, when this very requirement was specifically eliminated via congressional act.  Further, the ICCTA unequivocally abolished the ICC itself.  <u>See</u> <u>EFS Nat'l Bank v. Averitt Express, Inc.</u>, 164 F. Supp.2d 994, 1001 (W.D. Tenn. 2001) ("The requirement that a carrier must maintain approved tariff rates with the ICC cannot possibly apply because the ICC Termination Act of 1995 eliminated the ICC itself.").

However, regardless of whether the first prong is outmoded, the real issue here is whether the remaining three prongs are still applicable to non-household goods carriers.  Palletized argues that they are not, reasoning that because it need not satisfy the first prong, the entire test is inapplicable.  There has been no further guidance from the Fifth Circuit on the effect of the TIRRA and the ICCTA on the ability of a carrier to limit its liability.  However, several other courts have weighed in on this issue, including the Eleventh Circuit.

In <u>Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.</u>, 331 F.3d 834 (11th Cir. 2003), the Eleventh Circuit addressed the impact of the statutory changes on that circuit's identical four-

part liability limitation test. Noting that the language regarding carrier limitation was identical in all material respects in the current and previous versions of the Carmack Amendment, and that Congress is presumed to know the federal courts' interpretation of a statute, the Eleventh Circuit found that the statutory amendments had minimal effect on the Carmack Amendment and, hence, the test itself. Id. at 841. The court observed that "the most that can be said about the latest version of the [Carmack Amendment] is that a carrier is now required to provide a shipper with the carrier's tariff if the shipper requests it, instead of the shipper filing its tariff with the now-defunct ICC." Id. The court further held that the statutes did not alter the long-standing requirement that a carrier provide the shipper a reasonable opportunity to choose between different levels of liability. Id. at 841-42. Thus, the court concluded that a carrier must still satisfy this element of its "limitation of liability" test. Id. at 842. Notably, the defendant in Sassy Doll was a non-household goods carrier.

In Emerson Electric Supply Co. v. Estes Express Lines Corp., 324 F. Supp.2d 713 (W.D. Pa. 2004), a non-household goods case, the court, in a well-reasoned opinion, also concluded that the reasonable opportunity requirement survived passage of the TIRRA and ICCTA. Among other things, the court found that this requirement had been applied by courts since at least 1913. Id. at 727 (citing Adams Exp. Co. v. Croninger, 226 U.S. 491, 504 (1913)). The court additionally noted that any exceptions to the Carmack

Amendment's general rule of carrier liability must be construed narrowly. Id. at 727-28. To this end, it reasoned that "to ensure that the exception does not swallow the rule, a carrier should be required to offer at least two liability options in order to ensure that the shipper's agreement was well informed and deliberate." Id. at 728.

This court finds the reasoning used in Sassy Doll and Emerson to be highly persuasive and, therefore, similarly concludes that the reasonable opportunity requirement is still applicable. Thus, in order for Palletized to have properly limited its liability, it was required to provide Bertling Logistics a reasonable opportunity to choose between different levels of liability.

Although these two opinions did not specifically discuss the second and fourth prongs of the test, the court has no reason to believe they were invalidated by either the TIRRA or the ICCTA. The court believes that these two factors, which impose a burden upon a motor carrier to show that it obtained the shipper's agreement as to its choice of liability and that it issued a bill of lading or receipt prior to commencing delivery, are inextricably intertwined with the fair opportunity requirement. These factors are vital to ensuring a fair result for the shipper because they require that the shipper be afforded a fair opportunity beforehand to make a deliberate and well-informed choice, and that the shipper in fact make a conscious decision to limit its recovery. Another reason to continue the application of these two prongs is that, in

6

the absence of further guidance from the Fifth Circuit on this issue, the court is loathe to make wholesale changes to existing law.

### 2. Did Palletized satisfy the Hoskins test?

Palletized argues that even assuming the final three prongs of the Hoskins test apply, it has fully satisfied each of them or, at a minimum, raised a genuine issue of material fact as to whether it did. The court agrees that Palletized has raised a fact issue on each relevant prong.

#### a. Reasonable Opportunity to Choose Between Different Levels of Liability

Palletized contends that Bertling Logistics had a reasonable opportunity to declare a higher value on the module because it had a prior course of dealing with Palletized by which it was familiar with Palletized's liability limitation. On this point, Palletized takes issue with the court's previous determination that it did not sufficiently establish as a matter of law a course of dealing with Bertling Logistics.

The only evidence Palletized submitted with regard to a course of dealing was the sworn affidavit of its Vice-President, Rex King ("King"). In relevant part, King attested that, at the time of the accident underlying this suit, Bertling Logistics and Palletized "had an existing course of dealing in which the parties recognized that goods carried by Palletized would be carried pursuant to

Palletized's bills of lading."[3]  Palletized previously argued that this statement was sufficient to demonstrate there was a course of dealing by which Bertling Logistics had actual knowledge during the subject transaction of Palletized's bill of lading and the tariff incorporated therein, which contained its limitation of liability provision.  The court determined that King's statement was devoid of the specificity necessary to establish, as a matter of law, that Palletized and Bertling Logistics had a prior course of dealing or that Bertling Logistics had knowledge of Palletized's liability limitation in this particular instance.  The court granted Plaintiff's motion seeking to preclude Palletized from limiting its liability.

Palletized contends this ruling was in error because King's statement establishes a course of dealing or, at the very least, raises a fact issue regarding course of dealing.  Although the court is disinclined to reconsider its decision that the statement was insufficient to justify summary judgment in Palletized's favor, it is convinced that the evidence is sufficient to raise a fact issue on course of dealing.

Palletized contends additional evidence apart from the King affidavit raises a fact issue as to whether Bertling Logistics had a reasonable opportunity to choose between different levels of liability.  It directs the court, for example, to the invoice that

---

[3]  Affidavit of Mike King in Support of Summary Judgment, Docket Entry No. 28, Exhibit 7 ("King Aff.") ¶ 4.

Bertling Logistics issued to Bertling Sweden in connection with the subject transaction.  One of the express "Terms of Service" printed on the backside of the invoice stated that, in order for the shipper to avoid a liability limitation imposed by a carrier used by Bertling Logistics, the shipper had to specifically instruct Bertling Logistics in writing to declare a higher value (and thus pay a higher transportation rate) for the goods being delivered.[4]  If no instructions were forthcoming from the shipper, the carrier delivered the goods subject to its liability limitation.[5]  It is undisputed Bertling Sweden never forwarded any such instructions to Bertling Logistics.  A second "Term of Service" provided that carriers engaged by Bertling Logistics would deliver goods "subject to all conditions as to limitation of liability for loss, damage, expense or delay" contained in any "bills of lading, receipts or tariffs issued by such carriers...."[6]

  Bertling Logistics is clearly imputed with actual knowledge of the terms of service contained on its own bill of lading.  Thus, a trier of fact could reasonably conclude that Bertling Logistics was fully aware Palletized would limit its liability unless Bertling Sweden instructed Bertling Logistics to declare a higher value for the module.  Because Bertling Sweden never gave Bertling Logistics

---

[4] See Docket Entry No. 28, Exhibit 5 ¶ 6.

[5] Id.

[6] Id. ¶ 2.

instructions to do so, a justifiable inference is that Bertling Sweden never intended to declare a higher value for the module in order to avoid Palletized's claimed liability limitation. Further, with the knowledge that Palletized would limit its liability absent instructions from Bertling Sweden, Bertling Logistics could have easily asked Palletized about the specifics of its tariff. Yet, as King attested, when Bertling Logistics contacted Palletized for a rate quote, it neither requested a copy of Palletized's tariff nor indicated it was willing to pay a higher rate for a higher declared value.[7]

When viewed together, this evidence raises a genuine issue as to whether Bertling Logistics had a reasonable opportunity to make a choice between differing levels of liability. "A shipper has a reasonable opportunity to choose among two levels of liability when she has 'both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed decision.'" Hoskins, 343 F.3d at 779 (quotations omitted). Palletized has raised a genuine issue of material fact on both elements of the reasonable opportunity requirement. First, Bertling Logistics' actual knowledge of the terms of service on its invoice indicate it had reasonable notice Palletized would limit its liability. Second, under the current version of the Carmack Amendment, Palletized would have been obligated to disclose the

---

[7]   King Aff. ¶ 4.

10

terms of its tariff if Bertling Logistics had requested them. This information would have permitted Bertling Logistics to make a deliberate and well-informed decision regarding carrier liability.

### b. Receipt of Shipper's Agreement as to its Choice of Liability

The court finds the summary judgment evidence raises a fact issue on this prong as well. As discussed above, the evidence in the record raises critical questions about Bertling Logistics' subjective intent as to the limitation of liability issue. The evidence shows that its default rule was to pay its carrier the lowest rate unless Bertling Sweden ordered it to declare a higher value, that Bertling Sweden did not order it to do so, and that it did not ask Palletized for a copy of its tariff despite having a reasonable opportunity to do so. The evidence also demonstrates that Bertling Logistics did in fact negotiate a low rate for the delivery as can be seen in its shipping instructions to Palletized. A low rate, of course, is commensurate with low carrier liability. Therefore, there is a fact issue whether the shipping instructions constituted a valid "written agreement" as to liability that was reasonable under the circumstances surrounding the transportation.

### c. Issuance of Bill of Lading Prior to Moving Shipment

The summary judgment record is clear that Palletized did not issue its bill of lading until after the overpass accident, several days subsequent to commencing movement of the module from Houston. However, on the pre-printed shipping form it issued to Palletized,

Bertling Logistics specifically instructed Palletized to forward it a copy of the bill of lading only <u>after</u> the receiver signed the bill in Colorado.  Palletized asserts that, consistent with these instructions, it prepared its bill of lading on May 15, 2002, the date of delivery.  The court finds Bertling Logistics' instruction to Palletized raises a fact issue as to whether Bertling Logistics intentionally waived its right to have Palletized issue the bill before delivery commenced.[8]

**B.     Motion for Entry of Final Judgment**

Bertling's motion for entry of final judgment under Federal Rule of Civil Procedure 54(b) is denied.  The court finds there is no sufficient cause to enter a partial final judgment in this case and that any alleged hardship to Bertling from denial of its motion is outweighed by the avoidance of piecemeal appeals by the parties.

## II.   Conclusion

In light of the foregoing findings, Palletized's motion for reconsideration is **GRANTED**.  Accordingly, the court **RECOMMENDS** that Plaintiff's motion for summary judgment (Docket Entry No. 24) be **DENIED** and Palletized's cross-motion for partial summary judgment (Docket Entry No. 29) be **DENIED**.  In addition, Bertling Logistics' Motion for Entry of Final Judgment is **DENIED**.

---

[8]     Palletized's various arguments regarding the alleged inapplicability of this prong are meritless.

SIGNED in Houston, Texas, this 10th day of June, 2005.

Nancy K. Johnson
United States Magistrate Judge